# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| HCPI/TENNESSEE, LLC<br><br>*Plaintiff,*<br><br>v.<br><br>MODIS ARCHITECTS, LLC; H.J. HIGH CONSTRUCTION COMPANY; and PROFESSIONAL SERVICE INDUSTRIES, INC., a/k/a INTERTEK PSI,<br><br>*Defendants.* | CASE NO.: |

## **COMPLAINT**

Plaintiff, HCPI/Tennessee, LLC, by and through its undersigned attorneys, hereby brings this action against Defendants, Modis Architects, LLC, H.J. High Construction Company, and Professional Service Industries, Inc. a/k/a Intertek PSI, and states as follows:

## **Parties**

1. Plaintiff, HCPI/Tennessee, LLC ("HCPI"), is a Delaware limited liability company with its principal place of business at 1920 Main Street, Ste. 1200, Irvine, California. HCPI has three members: (1) Healthpeak Properties, Inc.; (2) Daniel A. Wayland; and (3) Ashley D. Letendre. Healthpeak Properties, Inc. is a citizen of California and Maryland because it is

incorporated in Maryland and has a principal place of business at 1920 Main Street, Ste. 1200, Irvine, California. Mr. Wayland is a citizen of Colorado, domiciled in Denver, Colorado. Ms. Letendre also is a citizen of Colorado, domiciled in Denver, Colorado. HCPI is, therefore, a citizen of California, Colorado, and Maryland.

2. Defendant, Modis Architects, LLC ("Modis"), is a Florida limited liability company with a principal place of business at 4955 S.W. 75th Avenue, Miami, Florida 33155-4464. Modis has two members: Ivo Fernandez, Jr. and Robert K. Morisette. Mr. Fernandez and Mr. Morisette are citizens of Florida and domiciled in Miami, Florida. Modis is, therefore, a citizen of Florida.

3. Defendant, H.J. High Construction Company ("HJHC"), is a Florida corporation with a principal of business at 1015 West Amelia Street, Orlando, Florida 32805. HJHC is, therefore, a citizen of Florida.

4. Defendant, Professional Service Industries, Inc., a/k/a Intertek PSI ("PSI"), is a Delaware corporation with a principal place of business at 545 E. Algonquin Road, Arlington Heights, Illinois 60005. PSI is, therefore, a citizen of Illinois and Delaware.

**Jurisdiction & Venue**

5. Subject matter jurisdiction is proper before this Court pursuant to 28 U.S.C § 1332 because there exists complete diversity of citizenship between

the parties, as set forth in Paragraphs 1-4 above, and the amount in controversy exceeds $75,000.00.

6. Venue is proper before this Court pursuant to 28 U.S.C. § 1391 by virtue of the venue provision in the Construction Agreement (as hereafter defined) between HCPI and HJHC, which provides for venue in Orlando and/or Orange County, Florida; by virtue of the Design Agreement (as hereafter defined) between HCPI and Modis, which provides for venue in the county in which the Project (as hereafter defined) is located; and because the events giving rise to the claim occurred in this district. *See* Exhibit 1, at § 8.2.6; Exhibit 2, at § 13.7.

## Introduction

7. In September 2003, HCPI acquired a medical office building known as the Lucerne Medical Plaza at 100 W. Gore St., Orlando, Florida.

8. Several years later, in or around 2016, HCPI decided to demolish the existing parking garage at the Lucerne Medical Plaza and retain Modis and HJHC to design, and construct, respectively, a new, two-level parking garage connected to the office building (the "Garage" or "Project").

9. HCPI brings this action seeking damages from Modis, HJHC, and PSI for failing to properly design, construct, and inspect the Garage, resulting in several substantial defects and deficiencies to the Project.

## Facts Common to All Counts

<u>The Parties' Contracts</u>

10. In or around December 2016, HCPI, as Owner, entered into a Standard Form of Agreement between Owner and Architect with Modis (the "Design Agreement") pursuant to which Modis agreed to design the Project. The Design Agreement is attached hereto as **Exhibit 1**.

11. Under the Design Agreement, Modis promised, without limitation, to among other things:

   a. "[P]erform its services consistent with the standards of professional skill and care exercised by architects practicing in the same or similar locality under the same or similar circumstances for projects of similar scope for first class commercial projects for institutional owners." Ex. 1, at § 2.2.

   b. "[P]ossess[] sufficient skill, knowledge, experience, and ability to fully perform the services and its obligations under th[e] Agreement and [to] assign to this Project similarly qualified individual professional architects, managing those professionals as needed to provide the services contemplated herein." *Id.*

   c. "[V]isit the site at intervals appropriate to the stage of construction . . . but not less than weekly . . . to use reasonable efforts to guard the Owner against defects and deficiencies in the Work and to determine, in general, if the Work is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents." *Id.* at § 3.6.2.1.

   d. Prepare the structural engineering design for the Garage, which was to use concrete prefabricated components. Ex. B to Ex. 1.

12. In or around October 2017, HCPI, as Owner, entered a Standard Form of Agreement between Owner and Contractor with HJHC (the

"Construction Agreement") pursuant to which HJHC agreed to serve as the general contractor for the Project. Copies of the Construction Agreement, its exhibits, and its general conditions are attached as **Exhibit 2**.

13. Under the Construction Agreement, HJHC agreed, without limitation, to among other things:

- a. "[F]ully execute the Work described in the Contract Documents and reasonably inferable therefrom as necessary to produce the intended results." Ex. 2, at Art. 2.

- b. "[P]erform all Work, make all observations and judgments and perform such other obligations of Contractor described in this Agreement in a manner consistent with the best and most reliable contractors in the construction industry . . ." *Id.*

- c. "[P]rovide and furnish . . . supervision . . . required for or in connection with the complete construction of the Project." *Id.*

- d. "[E]nsure that the Work . . . will be without defect, will be new and in accordance with the Contracts Documents and consistent with the Standard of Care." *Id.* at § 2.4.

- e. "Warrant[] to the Owner and Architect. . . that the Work will conform to the requirements of the Contract Documents and will be free from defects, except for those inherent in the quality of the Work the Contract Documents require or permit." *See Id.*, General Conditions of the Contract for Construction, at § 3.5.1.

14. On September 25, 2017, HCPI entered into a Master Professional Services Contract with PSI. Amendments to that contract were entered by Ken Whitaker as HCPI's agent on November 6, 2017, December 21, 2017, and July 23, 2018. Copies of these documents, which will collectively be referred to herein as "the Inspection Agreement", are attached as **Exhibit 3**.

15. Under the Inspection Agreement, PSI agreed to serve as the Project's threshold inspector. *See* Ex. 3.

16. In that role, PSI was required to assess the sufficiency of the Garage's structural components and comply with the inspection requirements imposed by F.S.A. § 553.79, including, but not limited to, performing structural inspections pursuant to a structural plan prepared by Modis and certifying that the Project's structure was adequate.

17. PSI's scope of work for the Project included, but was not limited to, the following obligations:

   a. Observing placement of concrete and reinforcing steel for the slabs;

   b. Checking the slabs for proper thickness, levelness, and flatness;

   c. Verifying that the placement of all concrete reinforcement complied with the design requirements;

   d. Confirming that all reinforcement had proper concrete cover; and

   e. Reporting deviations from specified and approved procedures in the precast fabrication and erections drawings for the Garage.

The Garage's Layout and Design Features

18. Pursuant to its obligations under the Design Agreement, Modis issued drawings and specifications containing the design of the two-level Garage.

19. Modis' design called for an upper level that consisted of an elevated deck accessible directly from the street level and a lower level accessible via a ramp located on the southwest edge of the Garage.

20. To control and minimize the impacts of weather and fire on the Garage, Modis' design included:

   a. Expansion joints between the three sections of the Garage's slabs to allow the slabs to expand and contract under temperature changes without sustaining damage;

   b. A traffic coating system on the Garage's exposed upper-level slab to, *inter alia*, waterproof the slab; and

   c. Firestops in the elevated slabs at and below the expansion joints.

The Design of the Garage's Structural Support System

21. Pursuant to the terms of the Design Agreement, Modis was responsible for the structural engineering required for Project and hired AB Consulting Engineers, Inc. ("AB") as its structural engineer of record. *See* Ex. 1, at § 2.3; Ex. B to Ex. 1.

22. Modis' design of the structural system consisted of three primary elements: (1) soffit beams, (2) joists, and (3) elevated slabs. The soffit beams required by the design contained two sections: the bottom portion was to consist of precast beam whereas the upper section was to be cast in place during the slab's placement. The design required that the precast joists' ends

be notched and placed into the precast section of the soffit beams. The soffit beams' upper sections were to be cast over and around the joists, causing the joists' end to become rigidly fixed with little to no allowance for movement. These soffit beams and joists were intended to support the elevated slabs.

23. The design documents also imposed thickness requirements for the Garage's slabs, mandated the installation of a single layer of reinforcement placed at mid-depth of the slab, and required additional reinforcement to be installed at the top half of the slab over the soffit beams.

24. The design of the structural support system required the use of precast joists supported by composite soffit beams to hold the elevated slabs in the Garage.

25. The design of the precast elements of the structural support system was undertaken by HJHC's subcontractor, Structural Prestressed Industries ("SPI").

26. In connection with its' design responsibilities, SPI issued precast shop drawings and design calculations for the design of the prestressed joists and soffit beams, which were reviewed by Modis and AB.

27. In addition to the design of the precast elements, SPI was responsible for fabrication of the precast elements of the structural support system of the Project.

28. AB issued For Construction Structural Documents on June 12, 2017, containing the design of the Garage's structural support system, including the precast elements designed by SPI.

The Garage's Construction

29. HJHC commenced construction of the Garage began in or around late 2017.

30. During construction, HJHC built and installed the Garage's structural support system, the traffic coating system on the Garage's upper-level slab, and the firestops at the soffits of the elevated slabs at and below expansion joints.

31. Under the Design Agreement, Modis was obligated to visit the Project site during construction on, at minimum, a weekly basis to assess whether HJHC was building the Garage in accordance with the design. *See* Ex. 1, at § 3.6.2.1.

32. The construction of the Project took approximately 15 months, and the City of Orlando issued a certificate of occupancy on March 18, 2023.

HCPI Discovers Design & Construction Defects in the Garage

33. In or around late spring of 2019, HCPI first observed problems with the Garage including, without limitation, the following defects and deficiencies:

    a. Cracking and spalling of and near the Garage's girders, joists, and soffit beams, especially below the joist bearings;

    b. Failure of the traffic coating system on the Garage's upper-level slab, including debonding and delaminating at several large areas;

    c. Widespread cracking of the upper-level slab that appears to penetrate through the slab, which would allow moisture to infiltrate the Garage's structural system and jeopardize the structure's durability; and

    d. Gapping between firestops and adjacent concrete, tearing of the firestops, and missing firestops.

34. Modis' design contributed to the defects and deficiencies described above by among other acts and omissions:

    a. Failing to design a structural system that allowed for movement;

    b. Failing to consider the effect of thermally induced movement of precast joists in the Garage's structural system;

    c. Failing to provide for reinforcement that would allow the joists and soffits in the Garage's structural system to resist stresses imposed by thermally induced movements;

    d. Failing to account for the need for the structural system to move to allow restrained shrinkage;

    e. Failing to adequately supervise its engineer's design of the Garage's structural system;

    f. Failing to adequately review the delegated design of the precast elements for the Garage; and

    g. Failing to properly review, supervise, and inspect the installation of the Garage's structural system, including, without limitation, failing to conduct sufficient and/or thorough site visits at regular intervals.

35. HJHC's construction of the Garage, and assistance with the design of the structural portion of the Project, also contributed to the defects and deficiencies described above by among other acts and omissions:

    a. Failing to properly construct and install the Garage's elevated slabs to, *inter alia*, satisfy the specified slab thickness requirements;

    b. Failing to properly install reinforcement cover in and at the Garage's slabs in accordance with the design;

    c. Failing to conduct proper surface preparation for the installation of the traffic coating system on the Garage's upper-level slab and properly install that system;

    d. Failing to properly install firestops at the soffit of the elevated slab at and below expansion joints;

    e. Failing to supervise and reject its subcontractor's deficient design of the precast elements for the Garage; and

    f. Failing to adequately design those portions of the Garage's structural system delegated to HJHC and/or SPI by neglecting the items described in Paragraph 34(a)-(d) from the design.

36. HCPI has incurred significant expenses to address the defects and deficiencies described above by, including, but not limited to:

    a. Installing shoring to support structural elements exhibiting cracking and spalling;

    b. Sealing cracks and repairing spalls;

  c. Wrapping soffit beams with carbon fiber reinforced polymer to mitigate future spalling; and

  d. Removing the traffic coating system from the driving lanes on the Garage's upper level.

 37. HCPI will sustain additional costs to fix the defects and deficiencies described above in the form of, *inter alia*:

  a. Repairing the cracking and spalling in the structural system;

  b. Installing reinforcement in the structural system to prevent further distresses;

  c. Monitoring the structural system for additional failures;

  d. Removing the remainder of the original traffic coating system;

  e. Installing a new traffic coating system on the Garage's upper level;

  f. Filling and sealing remaining cracks in the Garage; and

  g. Replacing all deteriorated (or missing) firestops.

### Count I – Breach of Contract
### (against Defendant Modis Architects, LLC)

 38. HCPI hereby realleges and incorporates by reference Paragraphs 1-37 of this Complaint.

 39. The Design Agreement between HCPI and Modis is a valid and enforceable contract supported by consideration.

40. HCPI substantially performed its obligations and any conditions precedent under the Design Agreement.

41. Modis materially breached the Design Agreement, including, but not limited to, its standard of care and the provisions of the Design Agreement identified in Paragraph 11 above, by, among other acts, errors, and/or omissions:

   a. Failing to consider the effect of thermally induced movement of precast joists, leading to (i) cracking and spalling of the slabs, girders, joists, precast joist bearings, upper-level slab, and other components of the Garage, (ii) the failure of the traffic coating system, and (iii) failed firestops;

   b. Failing to provide for reinforcement that would allow the joists and soffits to resist stresses imposed by thermally induced movements, resulting in (i) cracking and spalling of the slabs, girders, joists, precast joist bearings, upper-level slab, and other components of the Garage, (ii) the failure of the traffic coating system, and (iii) failed firestops;

   c. Failing to account for the need for the structural system to move to allow restrained shrinkage, resulting in cracks in the upper-level slab and other components of the Garage;

   d. Failing to adequately supervise its engineer's design of the Garage's structural system for, including, without limitation, the slabs;

   e. Failing to provide a structural design for the Garage that met the Standard of Care under the Design Agreement;

   f. Failing to adequately review the delegated design of the precast elements for the Garage; and

    g. Failing to properly review, supervise, and inspect the installation of the structural system, including, without limitation, failing to conduct sufficient and/or thorough site visits at regular intervals.

42. As a direct result of Modis' breaches of the Design Agreement, HCPI suffered and will suffer damages in excess of $1,000,000.00 to redress the deficiencies and defects with the Garage.

43. HCPI is entitled to attorney's fees and costs incurred in connection with this action if it prevails against Modis. *See* **Ex. 1**, at § 8.2.6.

WHEREFORE, Plaintiff HCPI/Tennessee, LLC prays for judgment in its favor and against Defendant Modis Architects, LLC for compensatory and monetary damages in an amount to be determined by the trier of facts, plus interest, reasonable attorney's fees, costs, and for such other and further relief as may be just and proper.

### Count II – Breach of Contract
### (against Defendant H.J. High Construction Company)

44. Plaintiff hereby realleges and incorporates by reference Paragraphs 1-37 of this Complaint.

45. The Construction Agreement between HCPI and HJHC is a valid and enforceable contract supported by consideration.

46. HCPI substantially performed its obligations and any conditions precedent under the Construction Agreement.

47. HJHC materially breached the Construction Agreement, including, but not limited to, the breaches of those provisions identified in Paragraph 13 above, by, among other acts:

   a. Failing to properly construct and install the Garage's elevated slabs, resulting in cracking and spalling of the slabs, girders, joists, precast joist bearings, upper-level slab, and other components of the Garage;

   b. Failing to properly install reinforcement cover in and at the Garage's slabs in accordance with the Project's design requirements, resulting in cracking and spalling of the slabs, girders, joists, precast joist bearings, upper-level slab, and other components of the Garage;

   c. Failing to conduct proper surface preparation for the installation of the traffic coating system on the Garage's upper-level slab and properly install that system;

   d. Failing to properly install firestops at the soffit of the elevated slab at and below expansion joints;

   e. Failing to supervise and reject its subcontractor's deficient design of the precast elements for the Garage; and

   f. Failing to adequately design those portions of the Garage's structural system for which HJHC was responsible.

48. As a direct result of HJHC's breaches of the Construction Agreement, HCPI suffered and will suffer damages in excess of $1,000,000.00 to redress the defects and deficiencies described above.

49. HCPI is entitled to attorney's fees and costs incurred in connection with this action if it prevails against HJHC. *See* **Ex. 2**, at §§ 13.5, 15.13.

WHEREFORE, Plaintiff HCPI/Tennessee, LLC prays for judgment in its favor and against Defendant H.J. High Construction Company for compensatory and monetary damages in an amount to be determined by the trier of facts, plus interest, reasonable attorney's fees, costs, and for such other and further relief as may be just and proper.

## Count III – Breach of Contract
**(against Defendant Professional Service Industries, Inc.)**

50. Plaintiff hereby realleges and incorporates by reference Paragraphs 1-37 of this Complaint.

51. The Inspection Agreement between PSI and HCPI is a valid and enforceable contract supported by consideration.

52. HCPI substantially performed its obligations and any conditions precedent under the Inspection Agreement.

53. PSI materially breached the Inspection Agreement by, among other acts, errors, and/or omissions:

   a. Failing to properly inspect the structural designs prepared by Modis and HJHC;

   b. Failing to properly inspect HJHC's construction and installation of the Garage's structural system and other elements; and

   c. Skipping concrete pours and other material events during the construction phase of the Project.

54. As a direct result of PSI's breaches of the Inspection Agreement, HCPI suffered and will suffer damages in excess of $1,000,000.00 to redress the defects and deficiencies described above.

WHEREFORE, Plaintiff HCPI/Tennessee, LLC prays for judgment in its favor and against Defendant Professional Service Industries, Inc. for compensatory and monetary damages in an amount to be determined by the trier of facts, plus interest, reasonable attorney's fees, costs, and for such other and further relief as may be just and proper.

Date: March 15, 2023

Respectfully submitted,

Plaintiff HCPI/Tennessee, LLC

/s/ Rinaldo J. Cartaya, III Esquire
RINALDO J. CARTAYA, III, ESQUIRE
Florida Bar #: 0108028
ROBIN KHANAL, ESQUIRE
Florida Bar #: 571032
255 South Orange Avenue, Suite 900
Orlando, Florida 32801
Telephone: 407-872-6011
Facsimile: 407-872-6012
CDOrlandoFiling@QPWBLaw.com
Rinaldo.Cartaya@QPWBLaw.com
RKhanal@QPWBLaw.com
Robert J. Harris (*pro hac vice* forthcoming)
Sean P. Higgins (*pro hac vice* forthcoming)
Harris Winick Harris LLP
333 West Wacker Drive, Ste. 2060
Chicago, IL 60606
T: (312) 662-4600
F: (312) 662-4599
rharris@hwhlegal.com
shiggins@hwhlegal.com